Lavurne UNRUH, Appellant,

v.

RUSHVILLE STATE BANK OF
RUSHVILLE, MISSOURI,
Appellee.

Richard D. DRIMMEL and Sharon
K. Drimmel, Appellants,

v.

RUSHVILLE STATE BANK OF
RUSHVILLE, MISSOURI,
Appellee,

U.S. Trustee's Office, Trustee.

Nos. 92–3020, 92–3026.

United States Court of Appeals,
Tenth Circuit.

March 5, 1993.

William E. Metcalf of Metcalf & Justus, Topeka, KS, for appellants.

Charles T. Engel of Cosgrove, Webb & Oman, Topeka, KS, for appellee.

Before MOORE and SETH, Circuit Judges, and CAMPOS, District Judge *.

* Honorable Santiago E. Campos, United States District Judge for the District of New Mexico, sitting by designation.

SETH, Circuit Judge.

This case, which consists of two actions consolidated below, Lavurne Unruh v. Rushville State Bank of Rushville, Missouri and Richard D. Drimmel and Sharon K. Drimmel v. Rushville State Bank of Rushville, Missouri, presents two issues: first, whether under the applicable rule of the Bankruptcy Code, 11 U.S.C. § 1129(b)(2)(B)(ii), Appellants Lavurne Unruh and Richard and Sharon Drimmel have an "interest" in their respective bankruptcy estates on account of which they are receiving or retaining "property"; and second, whether there is a "new value exception" to the rule and if so, whether Appellants meet that exception.

The Bankruptcy Court for the District of Kansas held that Appellants possessed "interests" in the form of possession and control of the assets of the businesses, and retained "property" on account of those interests. The bankruptcy court further found that the "new value exception" to the rule does not exist under the current Bankruptcy Code, and that even if it did exist, Appellants had not met their burden to establish the elements of the exception. The District Court for the District of Kansas affirmed the bankruptcy court 135 B.R. 410 and held that Appellants retained equitable ownership interests in their businesses and retained property on account of those interests. The court additionally held that the new value exception did not exist and did not reach the question of whether the exception had been satisfied. Appellants have appealed that judgment to this court, and we affirm.

The facts of this case, as determined by the district court, are undisputed. Appellants each operate family farms as sole proprietorships and hold additional employment aside from the farms. They filed Chapter 11 petitions and submitted plans for reorganization. The Drimmels' plan proposed to pay approximately five percent on the unsecured creditors' claims, and Mr. Unruh's plan proposed to pay two percent on the unsecured creditors' claims. Both plans further provided that Appellants would retain their property and assets sub-ject to the secured claims until completion of the plan, and free of them thereafter, and that Appellants would continue to manage the farms. In both cases, the unsecured creditors, including Appellee, rejected the plans, and Appellants requested a cram down under 11 U.S.C. § 1129(b).

The Drimmels presented evidence that the going concern value of their farm was $260, and that Mr. Drimmel had contributed $700 from his outside wages to the farm. Under the plan, the Drimmels are to donate their labor to the farm, and their son is to provide diesel fuel and machinery repairs. The farm will receive income from the sale of crops, rental of equipment, and "hypothetical" rental of the farmhouse to the Drimmels.

Mr. Unruh asserts that his farm has little or no going concern value. Under his plan, he will contribute his exempt tools of the trade to the farm.

This case turns on the application of 11 U.S.C. § 1129(b). Basically, this provides that upon the request of a proponent of the plan a court shall confirm a plan of reorganization notwithstanding the objections of a class of creditors so long as the plan does not discriminate and is fair and equitable with respect to each class of claims or interests that is impaired under and which has not accepted the plan. 11 U.S.C. § 1129(b)(1). The Code further describes the requirements that fulfill the condition that the plan be fair and equitable:

"(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

. . . .

"(B) With respect to a class of unsecured claims—

"(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

"(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain on ac-

count of such junior claim or interest any property."

11 U.S.C. § 1129(b)(2). In other words, the statute provision is violated if a dissenting class of unsecured creditors is not paid in full, or a junior claim or interest holder receives "property" on account of a claim or interest.

■ Appellants first contend that they do not have an "interest" on account of which they have received "property" within the meaning of the rule. We understand Appellants to be arguing that when the court makes a determination of whether a sole proprietor has an interest in the bankruptcy estate under the rule, the court must first consider what Congress meant by an "interest" and "property" when they codified the rule. Appellants assert that the legislative history of the rule indicates that the rule was only intended to apply to corporate reorganizations, and that "interest holders" were people considered to have separate legal identities from the entity being reorganized, such as stockholders or partners. Appellants further argue that since a sole proprietor has no separate interest from the proprietorship all property of the proprietor becomes property of the estate upon filing a petition. Thus, only if the value of the estate exceeds the amount of claims against it does the proprietor have a right to the property of the estate. When the estate is insolvent and has no going concern value, the sole proprietor has no "interest" under the rule. Similarly, since there is no value to the estate, a sole proprietor is not retaining any "property."

We disagree with the approach urged by Appellants. We stated the appropriate approach for statutory interpretation in *O'Connor v. U.S. Dep't of Energy*, 942 F.2d 771 (10th Cir.):

"When called upon to interpret a statute, the court must first examine the statutory language itself. When the language of the statute is clear and unambiguous, judicial inquiry is complete and that language controls absent rare and exceptional circumstances. A court should venture into the thicket of legisla-

tive history only when necessary to determine 'a statutory purpose obscured by ambiguity.'"

*Id.* at 773 (citations omitted). The Supreme Court has similarly held that "[a]bsent a clearly expressed legislative intention to the contrary, [statutory] language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766. The rule on its face is unambiguous. It prohibits a junior interest or claim holder from retaining or receiving property on account of that interest or claim when a dissenting class of unsecured creditors is not paid in full. Although the Bankruptcy Code does not define "interest," commentators hold the view that it is used to refer to holders of ownership interests.

"The Code does not define the term 'interest' but such term is used to subsume the ownership interest of an individual debtor in his property, the interest of equity security holders, as defined in section 101, and the interest of general partners in a debtor partnership."

5 COLLIER ON BANKRUPTCY ¶ 1141.01 at 1141–6 n. 12 (15th ed. 1992). Because Appellants have a right to the future profits of their farms regardless of insolvency at the time of the petition, we think that Appellants clearly have interests in their estates in the form of equitable ownership interests. In *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202, 108 S.Ct. 963, 966, 99 L.Ed.2d 169, the Supreme Court stated that such interests are cognizable as "interests" under the rule: "[t]here is little doubt that a reorganization plan in which respondents retain an equity interest in the farm is contrary to the absolute priority rule."

Because we find that the language of § 1129(b)(2)(B)(ii) is clear and unambiguous and that exceptional circumstances do not exist to warrant further inquiry, we need not "venture into the thicket of legislative history," *O'Connor*, 942 F.2d at 773. An examination of the legislative history of the rule in any case supports our holding that Appellants are "interest holders" within

the meaning of the rule. Although the legislative history indicates that many of the discussions were in terms of stockholders and corporate reorganizations, Appellants admit that sole proprietorships were discussed as well. The legislative history of § 1129(b)(2)(C), in which the "fair and equitable" requirement is applied to interest holders, indicates that sole proprietorships were intended to be included as "interest holders."

"Such interests may include the interests of general or limited partners in a partnership, *the interests of a sole proprietor in a proprietorship,* or the interest of common or preferred stockholders in a corporation."

Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 5 U.S.C.C.A.N. 6436, 6477 (1978) (emphasis added). The legislative history thus does not indicate an intention to exclude sole proprietorships from the rule, and the codification of the rule resulted in no such exclusion.

■ Appellants further argue that even if they do have interests, they have not received "property" on account of those interests since their farms have no value. This argument was expressly rejected in *Ahlers.* The Court stated:

"Even where debts far exceed the current value of assets, a debtor who retains his equity interest in the enterprise retains 'property.' Whether the value is 'present or prospective, for dividends or only for purposes of control' a retained equity interest is a property interest to 'which the creditors [are] entitled ... before the stockholders [can] retain it for any purpose whatever.' *Northern Pacific R. Co. v. Boyd,* 228 U.S. [482], at 508 [33 S.Ct. 554, at 561, 57 L.Ed. 931]. Indeed, even in a sole proprietorship, where 'going concern' value may be minimal, there may still be some value in the control of the enterprise; obviously, also at issue is the interest in potential future profits of a now-insolvent business. *See SEC v. Canandaigua Enterprises Corp.,* 339 F.2d 14, 21 (CA 2 1964) (Friendly, J). And while the Code itself does not define what 'property' means as the term is used in § 1129(b), the rele-

vant legislative history suggests that Congress' meaning was quite broad. ' "Property" includes both tangible and intangible property.' See H.R.Rep. No. 95–595, at 413."

*Ahlers,* 485 U.S. at 207–208, 108 S.Ct. at 969. Appellants in this case are retaining control of their farms and the rights to future profits. Under *Ahlers,* Appellants are receiving property within the meaning of the rule.

■ Appellants alternatively contend that the pre-Code, judicially created "new value exception" to the rule survived the enactment of the 1978 Bankruptcy Code, and that they have met the conditions of the exception. The new value exception was first set forth in *Case v. Los Angeles Lumber Products Co., Ltd.,* 308 U.S. 106, 121–122, 60 S.Ct. 1, 10, 84 L.Ed. 110. The Supreme Court, in dicta, stated:

"It is, of course, clear that there are circumstances under which stockholders may participate in a plan of reorganization of an insolvent debtor....

"... [W]e believe that to accord 'the creditor his full right of priority against the corporate assets' where the debtor is insolvent, the stockholder's participation must be based on a contribution in money or in money's worth, reasonably equivalent in view of all the circumstances to the participation of the stockholder."

This language led other courts to create the "new value exception" to the rule, in which equity holders could participate in distribution under a plan if they made substantial contributions that were necessary for the success of the plan. *See In re U.S. Truck Co., Inc.,* 800 F.2d 581 (6th Cir.). Lower courts have been divided as to whether the "new value exception" continues to be valid since the passage of the 1978 Code. The Supreme Court declined to expressly rule on its continued existence in *Ahlers,* 485 U.S. 197, 203–204 n. 3, 108 S.Ct. 963, 967 n. 3. The *Ahlers* court found that even if the "new value exception" did exist, the "new value" offered under the plan was inadequate.

The bankruptcy court in this case held that notwithstanding its finding that the rule did not survive the enactment of the 1978 Code, Appellants had not met the requirements of the exception. The bankruptcy court stated in its Memorandum of Decision dated November 15, 1989:

"[E]ven under the pre-Code pre-*Ahlers Los Angeles Lumber* exception, the debtor must show that the funds contributed are necessary to the reorganization, not merely necessary to the debtor's retention of interest, that the contribution is substantial and that it exceeds the value of the retained interest. The debtors in these cases have not carried their burden to establish this exception."

The district court agreed.

However, we hold that as in *Ahlers*, this case does not require us to reach the issue of whether the "new value exception" continues to exist. The bankruptcy court determined that Appellants had not provided adequate proof that they fulfilled the conditions established in *Los Angeles Lumber*. We agree with the bankruptcy court's determination.

The *Los Angeles Lumber* test requires that the contributions be substantial, necessary to the success of the reorganization, and equal to or exceeding the value of the retained interest in the estate. *Los Angeles Lumber*, 308 U.S. at 121–122, 60 S.Ct. at 10; *In re Potter Material Service, Inc.*, 781 F.2d 99, 101 (7th Cir.).

The proposed contributions of Appellants' labor are insufficient under *Ahlers*, where the Court stated:

"[R]espondent's promise of future services is intangible, inalienable, and, in all likelihood, unenforceable.... Unlike 'money or money's worth,' a promise of future services cannot be exchanged in any market for something of value to the creditors *today*. In fact, no decision of the Court or any Court of Appeals, other than the decision below, has ever found a promise to contribute future labor, management, or expertise sufficient to qualify for the *Los Angeles Lumber* exception to the absolute priority rule."

*Ahlers*, 485 U.S. at 204, 108 S.Ct. at 967. As for the proposed contribution of exempt property and post-petition wages from independent employment, the bankruptcy court found, and we agree, that Appellants have failed to provide evidence specific enough to support the elements of the exception.

In summary, we hold that the statute bars confirmation of Appellants' plans because they have interests in their businesses on account of which they retained property. We further hold that without deciding whether the "new value exception" continues to survive, Appellants have not, in any case, provided sufficient proof that they have fulfilled its requirements.

Accordingly, the judgment of the District Court for the District of Kansas is AFFIRMED.