James Albert COONES, Appellant,

v.

**MUTUAL LIFE INSURANCE COMPANY OF NEW YORK and Federal Deposit Insurance Corporation, Appellees.**

No. C90–0204J.

United States District Court, D. Wyoming.

March 10, 1994.

Stephen R. Winship, Winship & Associates, Casper, WY, for James Albert Coones and Cindy Lee Coones.

Fredrick L. Fisch, Jeanne R. Lee, Timothy Kingston, F.D.I.C., Denver, CO, for F.D.I.C.

Bruce N. Willoughby, Murane & Bostwick, Casper, WY, Clifton R. Jessup, Jr., Dallas, TX, for Mutual Life Ins. Co. of New York.

## ORDER ON APPEAL

ALAN B. JOHNSON, Chief Judge.

The above captioned matter is an appeal from final orders of the United States Bankruptcy Court for the District of Wyoming in Bankruptcy Case No. 88–05343–B. Appellant filed Notices of Appeal on March 19,

1990, and April 3, 1990, challenging the bankruptcy court's decisions dismissing the case and denying appellant's motion to convert to chapter 12.[1] Having considered the materials on file both in support of and in opposition to the appeal, and being fully advised in the premises, the Court FINDS and ORDERS as follows:

### Background

This Chapter 11 case was originally filed on October 20, 1988 by debtors James and Cindy Coones, who are former husband and wife, and former co-owners of a ranching business in Campbell County, Wyoming. On December 14, 1989, the bankruptcy court denied confirmation of the debtor's proposed reorganization plan [Plan] and ordered them to file an amended Chapter 11 plan by January 23, 1990. Order Denying Confirmation filed January 4, 1990. Mr. and Mrs. Coones subsequently filed a Motion to Convert to Chapter 12, or in the alternative, for an extension of time to file an amended plan. Both motions were denied. The bankruptcy court found that on the date of their petition, the Coones' debts exceeded the debt eligibility calculation for Chapter 12, and that appellants failed to show good cause to allow an extension of time to file an amended plan. February 8, 1990 Order Denying Debtor's Motions to Convert, and in the Alternative, to Extend Time.

Appellees are the Federal Deposit Insurance Corporation [FDIC] (acting as Receiver for Stockmen's Bank and Trust Company of Gillette and as Liquidator for the First National Bank of Sheridan), and The Mutual Life Insurance Company of New York [MONY]. Each are secured creditors.[2] In February, 1990, both FDIC and MONY filed Motions to dismiss the case. On March 29, 1990, the bankruptcy court granted both motions. The court found that there was a continuing diminution of the estate; that debtor's Plan had been denied confirmation;

that there was a complete absence of a reasonable likelihood of reorganization; and, that the debtors had failed to file an amended Chapter 11 plan within the time allowed by the court. Transcript of March 14, 1990 hearing at 33.

Additionally, the bankruptcy court stated that the absolute priority rule, 11 U.S.C. § 1129(b)(2)(B), required that unsecured creditors receive full payment on their claims before the debtors[3] would be permitted to retain any interest under the Plan. *Id.* at 154. The court recognized no exceptions to this confirmation requirement and dismissed the case pursuant to 11 U.S.C. § 1112(b). *Id.* at 157. The March 29, 1990 Order dismissing the case also provided that the debtors had 10 days within which to convert their case to a case under Chapter 7. On April 4, 1990, Cindy Lee Coones moved to convert her case to a case under Chapter 7. By that time Mr. and Mrs. Coones were divorced. Their cases were deconsolidated and Mrs. Coones' Chapter 7 case was given the number 90–00318–A. On August 22, 1990, Cindy Lee Coones received a discharge of all of her pre-petition debts.

On April 23, 1990, appellant James Coones was granted a stay of the March 29, 1990 Order dismissing the Chapter 11 case pending appeal. MONY and FDIC moved for reconsideration. On July 2, 1990, the bankruptcy court entered its Order Upon Reconsideration requiring Mr. Coones to post a supersedeas bond of $152,000.00 or the April 23, 1990 Stay Order would be vacated. Appellant sought reconsideration of the July 2, 1990 Reconsideration Order, or a reduction in the amount of bond required. The bankruptcy court declined to continue the stay or to reduce the bond requirement. On November 29, 1990, this Court denied appellant's Motion to Vacate Order on Motions to Re-

---

1. On August 24, 1990, this Court entered its Order to Consolidate. That order consolidated Case Nos. MISC. 90–0064, C90–204–J and C90–205–J under Civil Case No. C90–204J.

2. Although MONY and the FDIC are secured creditors, because they are undersecured, they are also the largest unsecured creditors of the bankruptcy estate in this case. 11 U.S.C. § 506.

3. The single appellant in this case is James Coones, Cindy Lee Coones having converted her case to Chapter 7 and having received a discharge. However, at the time of the hearing before the bankruptcy court, the cases were not deconsolidated and both Mr. and Mrs. Coones were the debtors-in-possession who were the proponents of the proposed Chapter 11 plan.

consider, or to Modify Surety Bond. Mr. Coones never posted the required bond.

Simply stated, the issues raised by this appeal are: 1) whether the bankruptcy court erred in dismissing the case because of its findings that the debtor had no ability to effectuate a plan and that there was no reasonable likelihood of rehabilitation; 2) whether the bankruptcy court erred in denying appellant's Motion to Convert to Chapter 12; and, 3) whether the court erred in granting FDIC's Motion to Modify Stay.

### Standard of Review

In reviewing the decision of the bankruptcy court, "the district court as well as the court of appeals must accept the factual findings of the bankruptcy court unless they are clearly erroneous." *In re Mullet*, 817 F.2d 677 (10th Cir.1987) quoting *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399 (10th Cir.1986). The application of the clearly erroneous standard to the bankruptcy court's factual findings is consistent with the Constitution and does not require the district court to conduct a *de novo* review of the bankruptcy court's decision. *In re Mullet*, 817 F.2d at 679. However, both the court of appeals and the district court are to review the bankruptcy court's legal determinations *de novo. Id.*

### Discussion

I. **Whether the bankruptcy court erred in dismissing the debtor's Chapter 11 proceeding?**

■ In ruling on the Motion to Dismiss the bankruptcy court identified two primary bases for its decision, each of which implicated the absolute priority rule: (1) the debtor's inability to effectuate a plan, and (2) the absence of reasonable likelihood of rehabilitation. Transcript of March 14, 1990 hearing at 154. The court held that if the debtor could not form a plan that paid unsecured debts (in excess of $673,335.35) in full, as required by the absolute priority rule, then the debtor could not retain any interest under the Plan. 11 U.S.C. § 1129(b)(2)(B). The bankruptcy court stated "[u]nder the Priority Rule the debtors may not retain any interest whatsoever under the plan unless they pay for it in cash." Transcript of March 14, 1990 hearing at 153. The bankruptcy court did not recognize any exceptions to the absolute priority rule.

The bankruptcy court continued, however, by stating:

It's completely obvious to me, you don't have to talk about burden of proof, you don't have to talk about other evidence, you don't have to talk about anything. It's completely evident to me that this debtor would be incapable of paying, first of all [$] 998,000 plus and adding to that ten percent interest, and [$] 673,335.35 unsecured debt in a reasonable time.

That plan is so far out from being feasible, it is so unfeasible that there is no possible way that the Court can look at it and say, well, maybe they can do it, and therefore I shouldn't submit. I don't see any way in God's green Earth that this debtor can possibly pay over a million dollars secured, and over $ 673,000 unsecured, make enough to live off and succeed in the plan. It just can't be done. I don't think there is any way that a plan can be effectuated. Furthermore, there is absolutely no likelihood that he can be rehabilitated in this case because of the extreme amount of debt and because of his inability to pay 100 percent and retain any interest in the farm.

Transcript of March 14, 1990 hearing at 154–155.

During that hearing, the debtor indicated that other funds might be available to fund a plan, including monies from mineral and/or oil and gas interests on the debtor's land. When asked if there was other money available in terms of loans from relatives, the debtor stated his mother would make a cash contribution if a plan was approved in the amount of $10,000.00, although no evidence to that effect other than the debtor's self-serving testimony was offered during the hearing. Transcript of March 14, 1990 hearing at 124. The debtor's Memorandum in Support of Confirmation, R.O.A. (C–90–204) Vol. I, at 65, also suggested possible other contributions to capital might be made, including post-petition money derived from the sale of certain post-petition assets, and a waiver of exemptions upon confirmation. The debtor urged that "[m]ore importantly, a

substantial amount will be contributed by one of the Debtor's relatives to the estate for distribution to the unsecured creditors." *Id.* Thus, the debtor has argued that an exception to 11 U.S.C. § 1129(b)(2)(C)(ii), the Bankruptcy Code's codification of the absolute priority rule, applies because the "fresh capital contribution" exception to that rule survived enactment of the Bankruptcy Code in 1978 and the facts in the instant case support application of that exception.

This appeal raises a question of first impression in this district: whether the 1978 Bankruptcy Code recognizes a "new value" or "capital contribution" exception to the absolute priority rule. The question of the continuing vitality of this judge-made exception, first announced by the United States Supreme Court in 1939, is a hotly contested issue which has divided the circuits that have had the opportunity to consider it. The Tenth Circuit has refused to reach the issue of whether the "new value exception" to the absolute priority rule continues to exist following enactment of the 1978 Bankruptcy Code. *Unruh v. Rushville State Bank of Rushville, Missouri,* 987 F.2d 1506, 1510 (10th Cir.1993). Rather, the Tenth Circuit chose to analyze that case to determine whether the debtors had provided adequate proof that their proposed contributions were substantial, necessary to the success of the reorganization, and equal to or in excess of the value of the retained interest in the estate. *Id.,* citing *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 121–122, 60 S.Ct. 1, 10–11, 84 L.Ed. 110 (1939). The court stated that, even if the exception survived enactment of the Bankruptcy Code, it did not apply on the facts of the case.

■ The absolute priority rule states that a court may confirm a reorganization plan over the dissent of a class of unsecured creditors only if the members of that class are unimpaired; if, under the plan, they will receive property of a value equal to the allowed amount of their unsecured claims, or; if no junior class will share under the plan.[4]

11 U.S.C. § 1129(b)(2)(B). In other words, if a creditor class is impaired, they must be paid in full or, if paid less than in full, no junior class may receive anything under the plan. H.R.REP. NO. 95–595, 95th Cong., 2nd Sess. 413 (1977) 1978 U.S.Code Cong. & Admin.News at pp. 5787, 6369; Skeel, *The Uncertain State of an Unstated Rule: Bankruptcy's Contribution Rule Doctrine After Ahlers,* 63 Am.Bankr.L.J. 221, 222–23 (1989). The rule arose from the undefined requirement of the early bankruptcy statute that reorganization plans be "fair and equitable." *Northern Pacific Ry. Co. v. Boyd,* 228 U.S. 482, 504–05, 33 S.Ct. 554, 560–61, 57 L.Ed. 931 (1913). In the present case, the bankruptcy court recognized that current law does not permit confirmation of a Chapter 11 reorganization plan over the legitimate objections of impaired creditors if the proposed plan fails to comply with the absolute priority rule.

■ In *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939), the Supreme Court recognized that rigid application of the absolute priority rule may contradict the policy of promoting reorganization that underlies the law of bankruptcy. *Id.* at 121, 60 S.Ct. at 10. In answer to this concern, the Supreme Court developed the "new value" exception. *Id.* at 116–23, 60 S.Ct. at 7–11. This exception allows the debtor to contribute new capital and purchase an equity interest in the reorganized debtor, and thereby retain an ownership interest in the bankruptcy estate ahead of creditors to an extent equal to the new investment. Application of the exception requires: (1) that the infusion of new capital by the debtor be necessary for reorganization; (2) that the debtor's participation in the reorganization be reasonably equivalent to the new investment; and (3) the investment must be in cash or its equivalent. *Id.* at 121–22, 60 S.Ct. at 10–11. Although there is judicial authority holding that the exception did not survive enactment of the

---

4. As noted earlier in this opinion, the appellees were the debtor's largest unsecured creditors, who are "impaired" creditors under the terms of the Chapter 11 plan. The Chapter 11 plan proposed to pay Class 6 unsecured creditors $50,000 over a three year period. Unsecured claims totalled in excess of $673,000, thus paying somewhat over seven cents on the dollar to unsecured creditors. Neither the FDIC nor MONY accepted the proposed plan.

1978 Code, this Court finds that the new value exception is a viable aspect of the Bankruptcy Code's Chapter 11 "cram down" procedures until it is eliminated by the United States Supreme Court or the Tenth Circuit Court of Appeals.

In *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988), the Supreme Court was met with the argument that the adoption of the revised 1978 Bankruptcy Code eliminated the new value exception established by *Case.* The Court avoided deciding the issue by holding that even if the exception still existed under the Code, it would not apply to the facts of *Ahlers.* In *Ahlers,* the debtors retained an equity stake in their farm in exchange for future contributions of labor, management, and expertise. The Court noted, *"Los Angeles Lumber* itself rejected an analogous proposition, finding that the promise of the existing shareholders to pledge their 'financial standing and influence in the community' and their 'continuity of management' to the reorganized enterprise was '[in]adequate consideration' that could not possibly be deemed 'money's worth'." *Ahlers,* 485 U.S. at 204, 108 S.Ct. at 967 (quoting *In re Los Angeles Lumber Products Co.,* 308 U.S. 106, 122, 60 S.Ct. 1, 10, 84 L.Ed. 110 (1939)).

Many pre-*Ahlers* decisions assumed that the new value exception continued to exist after enactment of the revised Code. *See e.g., In re United States Truck Co.,* 800 F.2d 581 (6th Cir.1986); *In re Potter Material Service, Inc.,* 781 F.2d 99 (7th Cir.1986); *In re Future Energy Corp.,* 83 B.R. 470 (Bankr. S.D.Ohio 1988); *In re AG Consultants Grain Div.,* 77 B.R. 665 (Bankr.N.D.Ind.1987); *In re Marston Enterprises, Inc.,* 13 B.R. 514 (Bankr.E.D.N.Y.1981); *In re Sawmill Hydraulics, Inc.,* 72 B.R. 454 (Bankr.C.D.Ill. 1987). However, since *Ahlers* a significant split has emerged in court opinions considering the new value exception. *Kham & Nate's Shoes No. 2 Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1361–62 (7th Cir. 1990) (questioning the existence of the new value exception); *In re Stegall,* 865 F.2d 140, 141–42 (7th Cir.1989) (questioning new value exception); Paulen & Wuhrman, *The New*

*Value Exception to the Absolute Priority Rule: Is Ahlers the Beginning of the End?,* 93 COM.L.J. 303 (1988).

The bankruptcy court in *In re Greystone III Joint Venture,* 102 B.R. 560, 572–75 (Bankr.W.D.Tex.1989), held that the revised Bankruptcy Code incorporated the new value exception and premised its opinion, in part, upon principles of statutory construction. The *Greystone* court asserted that when Congress reenacts a statute that was subject to a widely accepted judicial gloss, the judicial construction is adopted as well, unless Congress makes its intent to eliminate such construction clear. *Id.* The court stated:

> [i]t is a time-honored principle of statutory construction that legislators are presumed to be aware of judicial glosses placed on prior statutory enactments, and that subsequent amendments and codification are presumed to have been carried into the new statute unless expressly repudiated. The Bankruptcy Code did not repudiate *Case,* so the long-standing equitable expansion of the absolute priority rule should be presumed to still be good law.

*Greystone,* 102 B.R. at 575 n. 20.

*Greystone* was appealed to the Fifth Circuit Court of Appeals. In its opinion, the Fifth Circuit refused to discuss the absolute priority rule. In its corrected opinion, published as *Matter of Greystone III Joint Venture,* 995 F.2d 1274 (5th Cir.1991), *cert. denied* — U.S. ——, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992), the Fifth Circuit withdrew that portion of the panel opinion, found at 995 F.2d 1281–84, which discussed the absolute priority rule and the new value exception.

The Seventh Circuit, in *Matter of Snyder,* 967 F.2d 1126, 1131 (7th Cir.1992), also refused to determine whether the "new value" exception survived enactment of the Bankruptcy Code. That court concluded instead that, "assuming the new value exception retains its vitality, the Debtors' proposed contribution fails to meet its requirements. We therefore again reserve the issue of the new value exception's continued viability for another day." *Id.*[5]

---

**5.** The lower court determined, in *In re Snyder,* 99   B.R. 885 (C.D.Ill.1989), that "there is nothing in

The Ninth Circuit, in *In re Bonner Mall Partnership*, 2 F.3d 899 (9th Cir.1993), *cert. granted U.S. Bancorp Mortgage Company v. Bonner Mall Partnership*, —— U.S. ——, 114 S.Ct. 681, 126 L.Ed.2d 648 (1994), held that the new value exception remains a vital part of bankruptcy law. That circuit stated:

> Although the question we must ultimately answer is whether the new value exception survived the enactment of the Bankruptcy Code, we should note, preliminarily, that the term "exception" is misleading. The doctrine is not actually an exception to the absolute priority rule but is rather a corollary principle, or, more simply a description of the limitations of the rule itself. It is, as indicated above, the set of conditions under which former shareholders may lawfully obtain a priority interest in the reorganized venture.... More properly, the new value exception should be called something like the "new capital-infusion doctrine" or as one commentator has suggested, "the scrutinize old equity participation rule." Elizabeth Warren, A Theory of Absolute Priority, 1991 Annual Survey of American law 9, 42.

The Ninth Circuit, applying "traditional tools of statutory construction," *Bonner Mall*, 2 F.3d at 908, determined that the 1978 codification of the absolute priority rule did not serve to eliminate the new value exception. *Id.*

The Supreme Court has provided guidance to courts regarding statutory construction and the Bankruptcy Code. In *Dewsnup v. Timm*, —— U.S. ——, ——, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992), the Supreme Court stated:

> When Congress amends the bankruptcy laws, it does not write "on a clean slate." ... Furthermore, this Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative his-

tory.... Of course, where the language is unambiguous, silence in the legislative history cannot be controlling. But given the ambiguity here, to attribute to Congress the intention to grant a debtor the broad new remedy against allowed claims to the extent that they become "unsecured" for purposes of § 506(a) without the new remedy's being mentioned somewhere in the Code itself or in the annals of Congress is not plausible, in our view, and is contrary to basic bankruptcy principles. (internal citations omitted).

*Dewsnup v. Timm* has been cited by courts as support for the view that the *Los Angeles Lumber* "new value exception" survived enactment of the Bankruptcy Code. *Matter of Snyder*, 967 F.2d 1126, 1129–30 (7th Cir. 1992); *In re SM 104 Ltd.*, 160 B.R. 202, 223 (Bankr.S.D.Fla.1993) (Opinion contains an excellent discussion of the current prevalent views, with extensive citations of authority, regarding the new value exception. Three general approaches are described: 1) *Los Angeles Lumber* created a "new value" exception" that survived enactment of the Bankruptcy Code; 2) the *Los Angeles Lumber* "exception" did not survive enactment of the Code; and 3) the "new value exception" is merely a corollary to the absolute priority rule.) Because the "new value exception" was clearly part of pre-Code judicially created practice, and because the Code itself is silent and the legislative history of the Code is virtually nonexistent and inconclusive on the issue of the new value exception, courts, relying on *Dewsnup*, have concluded that the exception must have survived enactment of the Code. *See also Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986).

The new value exception is supported by a strong policy consideration which permits the infusion of new capital in a reorganized enterprise to assure its continued life. This was always considered to be a desirable goal and designed to promote the aim of congressional intent to permit financially distressed

---

the legislative history which indicates that Congress, in enacting Section 1129, intended to eliminate this long standing concept.... Most courts have concluded that the exception sur-

vives the transition from the Bankruptcy Act to the Bankruptcy Code." 99 B.R. at 888–89 (citations omitted).

entities to achieve rehabilitation under Chapter 11. *In re Johnson,* 101 B.R. 307 (Bankr. M.D.Fla.1989). Because of public policy considerations and because the new value exception to the absolute priority rule was a well-established pre-Code principle which Congress failed to explicitly repudiate when it enacted the 1978 Bankruptcy Code, this Court agrees with the majority of jurisdictions in finding that the new value exception to the absolute priority rule is valid and should be considered by the bankruptcy court in applying the "fair and equitable" standard to proposed reorganization plans.

*The New Value Exception Applied*

■ Having decided that the new value exception is viable, this Court must now determine whether appellant's plan falls within its scope. As here, the application of this exception usually occurs in cases involving single asset real estate cases or individual farmers. *In re Johnson,* 101 B.R. 307, 310 (Bankr.M.D.Fla.1989). The *Johnson* court applied a two-part test to determine whether or not a post-confirmation contribution by a debtor would meet the *Los Angeles Lumber* standard: (1) the new value must represent a substantial contribution; which (2) must equal or exceed the value of the interest in property retained by the debtor. *Id.*

This approach is consistent with that of the Tenth Circuit in *Unruh v. Rushville State Bank of Rushville,* 987 F.2d 1506, 1510 (10th Cir.1993), in which the circuit court stated that the conditions established in *Los Angeles Lumber* must be met.

The *Los Angeles Lumber,* test requires that the contributions be substantial, necessary to the success of the reorganization, and equal to or exceeding the value of the retained interest in the estate. *Los Angeles Lumber,* 308 U.S. at 121–22, 60 S.Ct. at 10; *In re Potter Material Service, Inc.,* 781 F.2d 99, 101 (7th Cir.).

At the confirmation hearing, Mr. Coones ·indicated that contributions of money were available from sources other than the property of the estate, including an alleged cash contribution in the amount of $10,000.00 from his mother. Mr. Coones offered no evidence with respect to specific sources or specific sums of fresh capital. Transcript of March

14, 1990 hearing at 124. Furthermore, the bankruptcy court considered testimony of Steven K. Bentley, in addition to that of the debtor, with regard to the feasibility of the debtor's proposals for reorganization and the projections for income and expenses in the future. Transcript of March 14, 1990 hearing. Upon review of the record, this Court believes that bankruptcy court's determination that the debtor's inability to propose a feasible Chapter 11 plan required dismissal of the case is not clearly erroneous. It is readily apparent that the debtor's proposed contributions to capital are not substantial. The debtor has not provided sufficient proof that he has fulfilled the requirements of the *Los Angeles Lumber* test adopted by the Tenth Circuit concerning the new value exception to the absolute priority rule.

■ Furthermore, the record before this Court does not suggest that the debtor satisfied the remaining requirements for confirmation set forth in 11 U.S.C. § 1129. Although this Court has concluded that the absolute priority rule does not *prohibit* confirmation of a plan which permits the debtor to retain an interest in the reorganized debtor by contributing new value or capital to the enterprise, the debtor, as proponent of the plan, must still demonstrate that the remaining requirements of 11 U.S.C. § 1129 have been met.

■ Even in a cramdown, the plan proponent must satisfy all of the elements of Section 1129(a), with the exception of the requirement of § 1129(a)(8) that every impaired class must accept the plan. *In re SM 104 Ltd.,* 160 B.R. at 214 n. 22. Included in the elements of Section 1129(a) is the requirement that a plan of reorganization must be feasible. Section 1129(a)(11) provides that a plan is not feasible if the plan is "likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor ..., unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). Section 1129(a)(11) requires the plan proponent to show concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the plan. *In re SM 104 Ltd.,* 160 B.R. at 234.

Such a requirement prevents the confirmation of visionary schemes which promise creditors and interest holders more under a proposed plan than the debtor can possibly provide.... Section 1129(a)(11) does not, however, require a plan to guarantee success. Rather, the plan must simply offer a reasonable assurance of success.

The feasibility requirement of 11 U.S.C. § 1129(a)(11) provides the most compelling reason for the bankruptcy court's refusal to confirm the proposed Chapter 11 plan and ordering dismissal of the bankruptcy case. Notwithstanding the debtor's arguments and this Court's foregoing discussion of the absolute priority rule and the new value corollary, the Court finds the bankruptcy court properly determined that the debtor could not propose a feasible Chapter 11 plan which would provide for repayment of his creditors within a reasonable length of time. Stated more succinctly, no evidence was before the bankruptcy court which would have permitted the bankruptcy court to conclude the debtor could ever formulate a feasible Chapter 11 plan.

This Court must accept the bankruptcy court's factual findings unless clearly erroneous. The evidence presented to the bankruptcy court, as discussed above in other parts of this opinion, does not suggest that the bankruptcy court's factual findings with regard to the debtor's ability to propose a feasible plan with a reasonable assurance of success are clearly erroneous. The bankruptcy court's decisions shall be affirmed in their entirety.

*Failure to Grant Extension*

■ On January 3, 1990, the bankruptcy court denied confirmation of appellant's proposed reorganization plan and provided that the debtor could file an amended disclosure statement and plan within 20 days, or the case would be subject to possible dismissal. Appellant failed to file an amended plan by January 23, 1990, but requested an extension of time to do so, which was denied by the court. The request for an extension of time was filed in conjunction with the debtor's request to convert the case to a Chapter 12 proceeding. Appellant now argues, without citation to authority, that the bankruptcy court's refusal to grant his extension request constitutes error. The Court finds this contention to be entirely without merit, and further notes that throughout the proceedings the bankruptcy court exhibited extraordinary patience in the face of the debtor's apparent delay and stalling tactics.

■ The Code gives the bankruptcy court wide discretion to make appropriate dispositions of cases upon motion or sua sponte. Comment to subsection (b), 11 U.S.C. § 1112. In dismissing a case, the court is permitted to consider a number of factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases. *Id.* One such factor, specifically enumerated by the Code, is "unreasonable delay by the debtor that is prejudicial to creditors." 11 U.S.C. § 1112(b)(3). Appellant's inability to submit an amended plan within the time period allotted cannot possibly be attributed to any error or action of the bankruptcy court, but lies squarely with the appellant himself. The Court finds that the denial of appellant's extension request was properly within the court's discretion, and was clearly justified.

## II. Whether the bankruptcy court properly denied appellant's Motion to Convert to Chapter 12?

■ To be eligible for relief under Chapter 12 of the Bankruptcy Code, a debtor must first qualify as a "family farmer." 11 U.S.C. § 109(f). A family farmer is an:

individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000.00 ... on the date the case is filed....

11 U.S.C. § 101(17). At the heart of this issue is the distinction, if any, between the meaning of the terms "debt" and "claim" as applied to the definition of "family farmer."

In the present case the bankruptcy court found that because appellant's debts exceeded $1.5 million on the date of his petition, the Motion to Convert to Chapter 12 must be denied. Order of February 8, 1990. Appellant argues that he disputed a substantial portion of his total debt, specifically certain FDIC claims against the estate totalling

$472,782.30. Appellant contends that the bankruptcy court erred by including the disputed claim in the Chapter 12 threshold debt calculation. Appellant's Brief at 12. While admitting that the total "claims" against the estate exceed $1.5 million, appellant argues that only the undisputed "debts" totalling $1,092,379.21 should have been used in determining Chapter 12 eligibility. *Id.* at 37. The Court finds that the bankruptcy court properly determined that both claims and unliquidated debts are to be included in the debt eligibility calculation stated in section 101(17), whether or not they are disputed by the debtor. Transcript of February 2, 1990 hearing at 21.

The Code states that a "debt" means a "liability on a claim." 11 U.S.C. § 101(12). A "claim" is defined as a:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured....

11 U.S.C. § 101(5).

The legislative history behind this broad definition states that "the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." *In re Quintana,* 107 B.R. 234, 237 (Bankr.9th Cir. BAP 1989), citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 21–22 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5807–08, 6266, *affirmed* 915 F.2d 513 (9th Cir.1990). The legislative history behind the term "debt" indicates that it has the same broad meaning as "claim" and that the terms are coextensive. *In re Quintana,* 107 B.R. at 237; H.R.Rep. No. 95–595 at 310; S.Rep. No. 95–989 at 23, U.S.Code Cong. & Admin.News 1978, pp. 5809, 6267.

Appellant's argument in the present case is similar to the dissenting judge's position in *Quintana,* as well as opinions in other cases which narrowly define the term "debt" and generally hold that liability on a claim must be either established or unchallenged before a claim becomes a debt. *Quintana,* 107 B.R. at 244; *In re Lands,* 85 B.R. 83 (Bankr. E.D.Ark.1988); *In re Carpenter,* 79 B.R. 316

(Bankr.S.D.Ohio 1987); *In re Lambert,* 43 B.R. 913 (Bankr.D.Utah 1984). This Court, however, concludes that those opinions rely primarily on cases determining eligibility requirements that are unique to Chapter 13, and are inconsistent with the legislative history applicable to the rest of the Code, including Chapter 12. *Id.* at 237–38.

Furthermore, this issue has been put to rest by the United States Supreme Court. The Supreme Court has held that Congress' intent is that the meanings of the terms "claim" and "debt" are coextensive. *Pennsylvania Dept. of Pub. Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990); *see also In re Quintana,* 915 F.2d at 517. The appellant's arguments in this regard are without merit.

### III. Did the bankruptcy court have jurisdiction to consider FDIC's Motion to Modify Stay, and did the court err in granting the motion?

Here, appellant raises two objections regarding burden of proof. First, he contends that the bankruptcy court impermissibly shifted the burden of proof to the debtor during the hearing on the Motion to Dismiss. Secondly, appellant argues that the bankruptcy court granted FDIC's Motion to Modify Stay without first requiring that the FDIC satisfy its burden of proof.

*Motion to Dismiss*

Appellant contends that the bankruptcy court erred during the dismissal hearing when it required him to present his testimony opposing dismissal before any evidence or testimony was presented by the petitioning creditors. Appellant's Brief at 25. Additionally, appellant argues that the creditors' failure to present witnesses or exhibits in support of dismissal amounts to "clear error." *Id.*

Appellant's argument ignores the fact that by the time of the March 14, 1990 hearing, the bankruptcy court already had before it a substantial factual record in this case. That record was developed over a two year period and provided the court with all the factual basis that the bankruptcy judge

felt was necessary to warrant dismissal of the case. A bankruptcy court has the inherent power to dismiss cases as it deems necessary. *Finstrom v. Huisinga*, 101 B.R. 997, 999 (D.Minn.1989); *In re Ray*, 46 B.R. 424, 426 (Bankr.S.D.Ga.1984); *In re Jephunneh Lawrence & Associates Chartered*, 63 B.R. 318, 321 (Bankr.D.Colo.1986).

The bankruptcy court may only dismiss a case after "notice and a hearing." 11 U.S.C. § 1112(b). Both were provided to appellant as required by the Code. Transcript of March 14, 1990 hearing. Appellant fails to provide this Court with any authority that would require the bankruptcy court to formally review nearly two years worth of fact-finding in support of dismissal before permitting appellant to present evidence in opposition. Because the facts relating to this case were fully developed before the bankruptcy court during a two year period prior to the March 14, 1990 dismissal hearing, the Court finds that Bankruptcy Judge Mai and the parties were fully aware of the evidence existing in the record supporting dismissal. Further, the Court can find no error in the bankruptcy court's determination that the March 14, 1990 hearing should consist primarily of appellant's arguments and evidence in opposition to dismissal.

*Motion to Modify Stay*

### Jurisdiction

■ Appellant first contends that the bankruptcy court lacked jurisdiction to consider FDIC's Motion to Modify Stay because that matter was heard on March 15, 1990, the day after the court determined that dismissal of the entire case was appropriate. Appellant argues that once the case was dismissed, the court lost its jurisdiction over related matters. Appellants' brief at 37–38.

■ As a general rule, the dismissal of a bankruptcy case should result in the dismissal of "related proceedings" because the Court's jurisdiction of the latter depends, in the first instance, upon the nexus between the underlying bankruptcy case and the related proceedings. *In re Tim Wargo & Sons, Inc.*, 107 B.R. 626 (Bankr.E.D.Ark. 1989); *In re Smith*, 866 F.2d 576, 580 (3rd Cir.1989). However, Fed.R.Bankr.P. 9021 provides, in relevant part, that "[a] judgment

is effective when entered as provided in Rule 5003." Thus, a bankruptcy judgment does not take effect when it is "rendered", but only when it is "entered" by the clerk of the bankruptcy court in the manner provided for in Rule 5003. Bankruptcy Rule 9021. United States Bankruptcy Rule 9021(a) provides in part that "a judgment in an adversary proceeding or contested matter shall be set forth on a separate document." This rule is derived from Federal Rules of Civil Procedure 58 which also requires that "every judgment shall be set forth on a separate document." This particular provision of Rule 58 was added by amendment in 1963 in order to "eliminate uncertainty as to whether and when a judgment has been rendered and entered." 11 Wright & Miller, Federal Practice and Procedure 8. The rationale behind the adoption of the "separate document" provision of Rule 58 was set forth by the Judicial Conference: "The amended rule eliminates these uncertainties [as to whether and when a judgment has been rendered and entered] by requiring that there be a judgment set out on a separate document—distinct from any opinion. . . ."

In the present case the Order on Motions to Dismiss was entered on March 29, 1990. The bankruptcy court entered its Order Granting FDIC's Motion to Modify Stay on March 23, 1990, six days before the bankruptcy court relinquished its jurisdiction. Accordingly, the Court finds that the bankruptcy court's consideration of the FDIC's motion was a proper exercise of jurisdiction.

### Burden of Proof

■ Appellant next asserts that in granting FDIC's Motion to Modify Stay the bankruptcy court misapplied the requirements of the automatic stay provisions found in 11 U.S.C. § 362(d) because it failed to require evidence from the FDIC as to the amount of debt or the value of the collateral securing the debt. Appellant's Brief at 39. In support of his position appellant relies on cases setting forth burden of proof criteria applicable to Section 362(d) when the motion to modify stay is considered *before* the debtor has formulated a plan, and *before* the bankruptcy court has considered the feasibility of

that plan. *In re 1606 New Hampshire Ave. Associates*, 85 B.R. 298, 309 (Bankr.E.D.Pa.1988); *First Nat. Bank of Denver v. Turley*, 705 F.2d 1024, 1025 (8th Cir.1983). Appellant's reliance on the above authority is misplaced in that the proof requirements discussed are inapplicable to the facts of the present case.

Section 362(d), which sets forth the basic grounds for relief from the stay, provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

■ The standards for lifting the stay set forth in Section 362(d)(1) and (2) are in the disjunctive. If the court finds "cause," such as lack of adequate protection for the creditor, *or* that the debtor has no equity in the property sought to be foreclosed and has no need for the property to effectively reorganize, the court must lift the stay. *In re Diplomat Electronics Corp.*, 82 B.R. 688 (Bankr.S.D.N.Y.1988).

■ In *1606 New Hampshire Ave. Associates*, the court specifically found that there was no need to consider burden of proof criteria when it had the "full-blown" plan before it and could first determine whether or not a successful reorganization was feasible. *1606 New Hampshire Ave. Associates*, 85 B.R. at 309, citing *In re Gulph Woods Corp.*, 84 B.R. 961, 973 (Bankr.E.D.Pa.1988). Addressing the requirements of Section 362(d), the United States Supreme Court determined that "cause" warranting stay relief exists upon a finding that there is a lack of realistic possibility of effective reorganiza-

tion. *United States Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). In *Timbers,* the Court explained that once a movant under Section 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral is "necessary to an effective reorganization," which necessarily requires a showing that there is a reasonable possibility of a successful reorganization within a reasonable time. *Timbers*, 484 U.S. at 375–76, 108 S.Ct. at 632–33. The Supreme Court noted in dicta that although many bankruptcy courts demand less detailed showings of the prospect of reorganization during the period when the debtor is given the exclusive right to formulate a plan, a finding that there is a lack of any realistic prospect of effective reorganization, even during the exclusivity period, will require Section 362(d)(2) relief. *Id.* at 376, 108 S.Ct. at 633. The mere indispensability of the property to the debtor's survival and the debtor's hopes of reorganization are insufficient to justify continuation of the stay when reorganization is not reasonably possible. *In re Albany Partners, Ltd.*, 749 F.2d 670, 673 n. 7 (11th Cir.1984).

■ It is abundantly clear that in the present case Judge Mai had determined that the debtor had failed to establish a reasonable likelihood of reorganization, finding that he had no prospects for developing a feasible plan. Transcript of March 14, 1990 hearing at 155. Based upon this finding the bankruptcy court proceeded to rule on the FDIC motion, holding that there was no apparent reason to continue the automatic stay. *Id.* at 156–57. Consequently, the Court finds that the bankruptcy court's ruling concerning FDIC's Motion to Modify Stay was fully justified, and represented a proper application of the facts to the requirements of 11 U.S.C. § 362(d).

### Summary

The Court concludes that the "new value" exception or corollary to the absolute priority rule, as set forth in *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 60 S.Ct.

1, 84 L.Ed. 110 (1939), survives enactment of the Bankruptcy Code and, therefore, may be considered in determining the feasibility of appellant's reorganization plan. Here, the record discloses that the debtor has failed to demonstrate that the new value exception has application to him. Furthermore, the bankruptcy court's determination that the debtor could not propose a feasible plan of reorganization, even with the claimed injections of new capital, precludes application of the new value exception in this case. The bankruptcy court's orders determining that the debtor's Chapter 11 case should be dismissed shall be affirmed.

The Court further finds that the bankruptcy court properly considered FDIC's "disputed" claim in its consideration of appellant's motion to convert to Chapter 12, and correctly determined appellant's ineligibility. Lastly, the Court finds that the bankruptcy court had the requisite jurisdiction to consider the FDIC's motion to modify stay, and did not err in applying the requirements of section 362(d).

THEREFORE, IT IS **ORDERED** that the orders of the United States Bankruptcy Court for the District of Wyoming in Bankruptcy Case No. 88–05343–B dismissing the Chapter 11 proceeding and denying the debtor's motion to convert to a Chapter 12 proceeding, with respect to all issues on appeal and in accordance with the above opinion, shall be, and are, **AFFIRMED**.