**In re SUN VALLEY NEWSPAPERS, INC., Debtor.**

**SUN VALLEY NEWSPAPERS, INC., Appellant,**

v.

**SUN WORLD CORPORATION, Appellee.**

**BAP No. AZ–93–2267–RHZ.**
**Bankruptcy No. 92–11641 PHX–RTB.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted June 23, 1994.

Decided Aug. 8, 1994.

Candess J. Hunter, Phoenix, AZ, for appellant.

Peter J. Rathwell, Phoenix, AZ, for appellee.

Before RUSSELL, HAGAN, and

ZURZOLO [1], Bankruptcy Judges.

## *OPINION*

RUSSELL, Bankruptcy Judge:

A secured creditor filed a motion for relief from the automatic stay under § 362(d)(1) and (2).[2] Since there was no equity in the property and the debtor's plan was unconfirmable as a matter of law, the bankruptcy court granted the motion for relief under § 362(d)(2). The debtor appeals. We AFFIRM.

## I. FACTS

The debtor/appellant, Sun Valley Newspaper, Inc., ("Sun Valley") has been in the commercial printing business since its incorporation in 1987. It specializes in newspaper, magazine and tabloid-format publishing.

On August 30, 1991, Sun Valley and the appellee, Sun World Corporation, ("Sun World") entered into an agreement whereby Sun Valley would purchase substantially all of the assets of a division of Sun World. Along with the agreement, Sun Valley executed and delivered to Sun World a promissory note for the principal sum of $5,162,-229.92. Sun Valley also executed and delivered to Sun World a security agreement, granting Sun World a first lien security interest in substantially all of Sun Valley's assets.

Not long after the agreement was signed and executed, the parties began to have problems. Sun Valley was in default on the note, and Sun World was asserting liens on newspaper presses which resulted in lawsuits. As a result of these disputes, Sun Valley filed a Chapter 11 petition on September 29, 1992.

On October 14, 1992, Sun World filed its motion for relief from the automatic stay pursuant to § 362(d)(1) and (2). Sun World based its motion on the grounds that Sun Valley had no equity in the property, that it would be unable to successfully reorganize

and that "cause" existed since Sun Valley had sold a portion of Sun World's collateral.

Sun Valley objected to the motion, asserting that there may be equity in the property, and that it would be able to successfully reorganize due to the value of Sun Valley's assets as well as future ability to generate future revenue. A hearing was set for April 14, 1993.

One day before the hearing, Sun Valley filed its disclosure statement and plan of reorganization. The April 14, 1993 hearing was continued until May 11, 1993.

At the May 11, 1993 hearing, the bankruptcy court noted that the plan violated the absolute priority rule and § 524(e). In its order dated May 28, 1993, the bankruptcy court denied the motion for relief from the stay on the condition that Sun Valley either settle the dispute with Sun World or amend its plan within 30 days.

On June 8, 1993, the bankruptcy court ordered the debtor to file an amended disclosure statement. On June 18, 1993, Sun Valley filed its first amended disclosure statement and first amended plan. A disclosure statement hearing was set for July 14, 1993.

On July 8, 1993, Sun World filed a motion to dismiss the case or alternatively for entry of an order granting its motion for relief from the stay on the ground that Sun Valley's amended plan was unconfirmable. A hearing was set for that motion on September 7, 1993.

On July 14, 1993, a hearing was held on the debtor's first amended disclosure statement. The approval of the disclosure statement was taken under advisement.

On August 27, 1993, Sun Valley filed a second amended disclosure statement and second amended plan.

On September 7, 1993, the bankruptcy court entered a minute order denying approval of Sun Valley's first amended disclosure statement and continued until September 15, 1993 Sun World's motion to dismiss

---

1. Honorable Vincent P. Zurzolo, Bankruptcy Judge for the Central District of California, sitting by designation.

2. Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et seq.*

or, in the alternative, for an entry of an order granting relief from the stay. On September 15, 1993, the bankruptcy court entered a minute order taking the motion to dismiss or alternative relief from the stay under advisement.

On October 22, 1993, the bankruptcy court entered a minute order granting Sun World's motion for relief from the stay. On November 1, 1993, Sun Valley filed a notice of appeal. On November 16, 1993, the bankruptcy court entered a final order granting relief from the stay. On November 23, 1993, Sun Valley amended its notice of appeal to make reference to the November 16, 1993 order.

## II. ISSUE

Whether the bankruptcy court abused its discretion in granting relief from the automatic stay when the bankruptcy court made specific findings that there was no equity in the property and no prospect of a successful reorganization within a reasonable period of time.

## III. STANDARD OF REVIEW

■ An order on a motion for relief from the automatic stay is reviewed for an abuse of discretion. *In re Jewett,* 146 B.R. 250, 251 (9th Cir. BAP 1992); *In re Shirley,* 134 B.R. 940, 942 (9th Cir. BAP 1992). Under this standard, " 'a reviewing court cannot reverse unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.' " *In re Pace,* 159 B.R. 890, 897 (9th Cir. BAP 1993) (quoting *In re Bradford,* 112 B.R. 347, 351 (9th Cir. BAP 1990)).

## IV. DISCUSSION

A. *Right to Hearing on Plan*

■ Sun Valley spends a significant amount of time arguing that the "lifting of the automatic stay ... must be reversed because the Bankruptcy Court did so prematurely, without giving [the] Debtor a reasonable opportunity to demonstrate its ability to successfully reorganize." More specifically, Sun Valley claims the bankruptcy court erred by not holding a hearing to determine the feasibility of the second amended plan and disclosure statement. We disagree.

■ A bankruptcy court is not required to hold a hearing prior to granting relief from the automatic stay for every subsequent plan and disclosure statement filed. All that is required is that the court determine if a successful reorganization is possible within a reasonable period of time.

The Supreme Court has stated:

[T]here must be "a reasonable possibility of a successful reorganization within a *reasonable time.*"

*United Sav. Ass'n v. Timbers of Inwood Forest Assoc. Ltd.,* 484 U.S. 365, 376, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988) (citations omitted) (emphasis added) (quoting *In re Timbers of Inwood Forest Assoc. Ltd.,* 808 F.2d 363, 370–71 (5th Cir.1987)).

If this were not the case, Sun Valley would be able to file a new amended plan and disclosure statement prior · to every relief from the stay hearing and thus would be able to continue the hearings *ad infinitum.* In this case, it is clear that the real objective of the various plans and disclosure statements was to benefit the owners of Sun Valley and not the debtor itself. The owners are Bob and Sandra N. Thompson, who are the sole shareholders. The first plan and disclosure statement were filed one day before the relief from the stay hearing. The first amended plan and disclosure statement were filed two weeks before the next relief from the automatic stay hearing. The second amended plan and disclosure statement were filed 11 days before the hearing on Sun World's motion to dismiss and/or for relief from the automatic stay.

It is clear that the bankruptcy court considered the second amended plan and disclosure statement in determining whether to lift the automatic stay. Under the facts of this case, it was not an abuse of discretion for the bankruptcy court to lift the automatic stay without holding a hearing to determine the confirmability of the second amended plan.

**B.** *Section 362(d)(2)*

Section 362(d)(2) provides that "on request of a party in interest and after notice and hearing, the court shall grant relief from the stay ... with respect to a stay of an act against property ... if—(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2).

**1.** *Section 362(d)(2)(A)*

■ The Ninth Circuit Court of Appeals has held that the proper definition of "equity" for purposes of § 362(d)(2)(A) is the difference between the value of the property and all the encumbrances upon it. *Stewart v. Gurley,* 745 F.2d 1194, 1196 (9th Cir.1984). At the time the motion for relief from the stay was filed, there is evidence that the fair market value of the property was $3,581,390 and the liquidation value was $1,113,495. The indebtedness secured by liens against the property was $5,289,114.54. Accordingly, the bankruptcy court correctly concluded that there was no equity in the property.

**2.** *Section 362(d)(2)(B)*

Since the debtor does not have an equity in the property, the dispositive question is whether the property is necessary to an effective reorganization. As the Supreme Court explained, this means that the debtor must show that there is " 'a reasonable possibility of a successful reorganization within a reasonable time.' " *United Sav. Ass'n v. Timbers of Inwood Forest Assoc. Ltd.,* 484 U.S. 365, 376, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988) (citations omitted).

While it is true that a relief from the stay hearing should not be converted into a confirmation hearing, "the 'effective reorganization' requirement enunciated by the Supreme Court ... require[s] a showing by a debtor ... that a proposed or contemplated plan is not patently unconfirmable and has a realistic chance of being confirmed." *John Hancock Mut. Life Ins. v. Route 37 Bus. Park*

*Assoc.,* 987 F.2d 154, 157 (3d Cir.1993) (quoting *In re 266 Washington Assocs.,* 141 B.R. 275, 281 (Bankr.E.D.N.Y.1992), *aff'd,* 147 B.R. 827 (E.D.N.Y.1992)). Courts usually require the debtor to do more than manifest unsubstantiated hopes for a successful reorganization. *In re Canal Place Ltd. Partnership,* 921 F.2d 569, 577 (5th Cir.1991) (citing *Timbers,* 808 F.2d 363, 371 (5th Cir.1987) (en banc), *aff'd,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)).

Recently, a bankruptcy court summarized the cases interpreting § 362(d)(2)(B) and *Timbers* and concluded that the burden of proof is a "moving target which is more difficult to attain as the Chapter 11 case progresses." *In re Holly's Inc.,* 140 B.R. 643, 700 (Bankr.W.D.Mich.1992). That court concluded that the burden can be separated into four stages based upon when the creditor requests relief from the automatic stay. In the early stage of the case, "the burden of proof ... is satisfied if the debtor can offer sufficient evidence to indicate that a successful reorganization within a reasonable time is 'plausible.' " *Id.* at 701. Near the expiration of the exclusivity period, "the debtor must demonstrate that a successful reorganization within a reasonable time is 'probable.' " *Id.* at 702. After the expiration of the exclusivity period, "the debtor must offer sufficient evidence to indicate that a successful reorganization within a reasonable time is 'assured.' " *Id.* Regardless of the amount of time a case has been pending, if "the evidence indicates that a successful reorganization within a reasonable time is 'impossible,' the court must grant relief from the stay." *Id.* at 702–03.

■ In this case, Sun Valley argues that the bankruptcy court prematurely concluded that its plan of reorganization was unconfirmable when it had just filed a second amended plan of reorganization. Sun world asserts that Sun Valley had thirteen months of protection [3] and filed several plans, each of

---

**3.** The fact that Sun Valley was given thirteen months to confirm a plan and failed to do so after two plans were filed would constitute "cause" under § 362(d)(1).

In addition, the bankruptcy court ordered Sun Valley to file a first amended plan in order to cure any defects in its first plan. Sun Valley's first amended plan failed to cure any of the

which was fatally flawed and unconfirmable because of absolute priority and permanent injunction problems.

### 1. *Permanent Injunction—§ 524(e)*

■ The first objection raised by Sun World is that the plan attempts to modify or extinguish third party guarantee liability in violation of § 524(e). Sun Valley responded by asserting that the release of guarantors was corrected in its second amended plan.

Section 524(e) provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

The Ninth Circuit Court of Appeals in *In re American Hardwoods, Inc.*, 885 F.2d 621, 625–27 (9th Cir.1989) has held that bankruptcy courts lack jurisdiction and power to enjoin permanently, beyond confirmation of a plan, a creditor from enforcing a claim against a nondebtor guarantor.

The first plan provided that:

*All Creditors shall be precluded from asserting against any guarantor of the Debtor, or any other person accountable for any obligation of the Debtor, any claim or demand arising from any Claim that has been or is to be satisfied, discharged and released under this Plan.* Notwithstanding the foregoing, such guarantors shall remain liable for payment of the distributions required under this Plan to Creditors whose obligations they have guaranteed, to the same extent as if the Debtor and such Creditors had modified (under applicable non-bankruptcy law) the Debtor's respective obligations to such Creditors on terms consistent with the terms of this Plan, with the consent of such guarantors and without any other alteration to the separate agreement, if any, by which such guarantors

agreed to be liable for the Debtor's obligations. (Emphasis added)

The first amended plan provided that:

All guarantors and other persons shall remain liable for payment of the cash distributions required under this Plan to Creditors whose obligations they have guaranteed, to the same extent as if the Debtor and such Creditors had modified (under applicable non-bankruptcy law) the Debtor's respective obligations to such Creditors on terms consistent with the terms of this Plan, but *all creditors shall be precluded from asserting against any guarantor of the Debtor, or any other person accountable for any obligation of the Debtor, any claim or demand arising from any claim that has been or is to be satisfied, discharged and released under this Plan.* The modification of such obligations shall be deemed to have been made with the consent of such guarantors or other persons and without any other alteration to the separate agreements, if any, by which such guarantors or other persons agreed to be liable for the Debtor's obligations. (Emphasis added)

It appears that the only change between the plan and the first amended plan is the movement of text and the addition of the last sentence.[4] The first amended plan did nothing to eliminate the third party liability provision.

The second amended plan included all of the language in the first amended plan and included the following sentence at the end:

Notwithstanding the foregoing, however, if the Court at any time up to and including Confirmation, shall enter an order, judgment or other decree holding the provisions of this Section 13.2 to be unenforceable or unconfirmable, then this Section 13.2 shall be deemed null and void for all purposes.

---

defects addressed by the bankruptcy court. This also would constitute "cause" under § 362(d)(1).

Moreover, Sun Valley has failed to have any of the three disclosure statements approved by the bankruptcy court despite hearings held on June 8, 1993 and July 14, 1993. This would also constitute "cause" under § 362(d)(1).

**4.** It appears that the first clause beginning "All Creditors shall be precluded ..." of the plan was moved to the middle of the first amended plan, and the clause beginning "All guarantors ... shall remain liable for payment ..." was moved from the middle of the plan to the first sentence of the first amended plan.

The first two plans proposed to release the non-debtor guarantors from obligations to creditors, and therefore violate § 524(e) and are not confirmable. *American Hardwoods,* 885 F.2d at 626; *Underhill v. Royal,* 769 F.2d 1426, 1432 (9th Cir.1985); *In re Rohnert Park Auto Parts, Inc.,* 113 B.R. 610, 616 (9th Cir. BAP 1990); *In re Keller,* 157 B.R. 680, 686 (Bankr.E.D.Wash.1993).

The second amended plan also included a severability clause. This clause would not necessarily render the plan unconfirmable. Nevertheless, it is clear that the purpose of the clause is for the benefit of insiders.

2. *New Value Exception to Absolute Priority Rule*

█ The second objection raised by Sun World is that the second amended plan is unconfirmable because it provided that old equity holders were to receive all of the new equity in the reorganized company, in exchange for a valueless capital contribution. Sun Valley responded by claiming that old equity owners were conferring new value by cancelling their claim against the estate, cancelling their equity in the business, and contributing new human capital or "sweat equity" to the business.

The first plan provided that:

**Treatment of Allowed Interests**

Each holder of a Class 9 Interest [Insiders] shall retain his or her Interest unaffected except that no distribution on account of such Interest may be made by the Debtor until all distributions to Creditors under this Plan have been completed.

The first amended plan provided that:

**Treatment of Allowed Interests**

Each holder of a Class 9 Interest shall receive on account of such Interest his or her *Pro Rata* share of the new shares of stock in the Debtor that are issued pursuant to Section 10.2 [Issuance of New Stock] below and remain after distribution of shares to electing Class 7 [Unsecured Claims] and Class 8 [Deficiency Claims] Creditors.

The second amended plan provided that: **Treatment of Insider Claims and Interest**

9.1 *Insider Claims.* The holders of the Class 9 Insider Claims shall receive on the Effective Date, in exchange for the full and complete discharge of their Claims, all of the new shares in the Debtor to be issued pursuant to Article 10.2 below.

9.2 *Interest.* Each holder of a Class 10 Interest shall receive nothing whatsoever on account of such Interest and such Interest shall be deemed canceled upon the Effective Date.

█ To qualify for the new value exception to the absolute priority rule, the old equity owners must offer value that is (1) new, (2) substantial, (3) money or money's worth, (4) necessary for a successful reorganization, and (5) reasonably equivalent to the value or interest received. *See Case v. Los Angeles Lumber Products, Co.,* 308 U.S. 106, 121–22, 60 S.Ct. 1, 10, 84 L.Ed. 110 (1939).

Recently, the Ninth Circuit Court of Appeals revived the new value exception in *In re Bonner Mall Partnership,* 2 F.3d 899 (9th Cir.1993), *cert. granted,* — U.S. ——, 114 S.Ct. 681, 126 L.Ed.2d 648 (1994). The Ninth Circuit stated:

[I]f [the debtor's] Plan cannot possibly satisfy all of the requirements of the new value exception it cannot be confirmed as a matter of law and relief from stay must be granted.

*Bonner Mall,* 2 F.3d at 917. The Ninth Circuit also stated that interests in the new entity may not be "on account of" prior interest, but instead must be based on a substantial new capital contribution. *Bonner Mall,* 2 F.3d at 909.

Sun Valley believes that the contribution by the insiders are 'new' infusions of 'substantial' capital into the reorganized business. The bankruptcy court did not agree with Sun Valley.

As the bankruptcy court aptly stated:
If the insider claims were paid as part of the unsecured claims the payment would decline to about 7% of the claims.

Therefore, at best, the economic value of the insider claims is approximately $23,100.00 paid over a five year period. Under any reasonable present value analysis the

court assumes that such payment stream would have a present value of less than [sic] $20,000.00. If confirmed, the reorganized debtor would have assets worth in excess of $5,000,000.00, annual gross revenues of more than $3,700,000.00 and net income (excluding debt service under the plan) of about $840,000.00.

Under such facts, this court would be compelled to conclude that the value retained by the insider claimants is far greater than $20,000.00.

We agree with the bankruptcy court that the contribution is not "new value." In addition, Sun Valley argues that a release of the claims by the insiders may be deemed a form of capital contribution which is a benefit to the debtor, citing *In re Future Energy Corp.*, 83 B.R. 470, 498 (Bankr.S.D.Ohio 1988).

We decline to read *Future Energy* so broadly. The court in *Future Energy* limited its holding to a finding that capital contribution exists when the transaction both benefits the debtor and places the shareholder in a position of economic risk. *Id.* at 498. The plan does not put the equity holders in any risk.

The more preferred view is in *In re Snyder*, 967 F.2d 1126 (7th Cir.1992). The Seventh Circuit in *Snyder* stated:

The Debtors first propose to obtain a release of their father's lien on their farm machinery and to pay the creditors the value of the machinery ($20,000) over five years. This contribution, however, is not an *up-front* infusion of money or money's worth. Like the promises of future labor rejected in *Los Angeles Lumber* [308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939) ] and [*Norwest Bank Worthington v.* ] *Ahlers* [485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) ], and the guarantees rejected in *Kham & Nate's Shoes* [*v. First Bank of Whiting*, 908 F.2d 1351, 1362 (7th Cir. 1990) ], the release of the lien "has no place in the asset column of the balance sheet of the new [entity]."

*Id.* at 1131 (Emphasis added).

Under the *Snyder* view, the contributions through the cancellation of the alleged debt owed to the insiders is not "up-front" and "[does] not constitute the sort of infusion of new funds 'essential to the success of the undertaking' contemplated by the new value exception." *Id.* (quoting *Los Angeles Lumber*, 308 U.S. at 121, 60 S.Ct. at 10).

In addition, it appears that there is absolutely no apparent reason why this supposed new equity (i.e. reduction of the claim) would be either "necessary" for the reorganization or substantial.

Sun Valley also argues that so-called "sweat equity" is substantial contribution. The Supreme Court, however, has stated that this alone would not qualify as "money or money's worth." *Northwest Bank Worthington v. Ahlers*, 485 U.S. 197, 204, 108 S.Ct. 963, 967, 99 L.Ed.2d 169 (1988).

As was the case in the § 524(e) issue, it is clear that the main purpose of the plan was to benefit the insiders. In fact, the first two plans did not attempt to provide new equity. The third plan falls far short of the requirements to satisfy the new value exception to the absolute priority rule.

Sun Valley has failed to satisfy all the requirements of the new value exception to the absolute priority rule as required by *Bonner Mall*, 2 F.3d at 917. Therefore, all of the plans are unconfirmable as a matter of law.

## V. CONCLUSION

The bankruptcy court did not abuse its discretion in granting relief from the automatic stay under § 362(d)(2). Sun Valley failed to demonstrate that there was a reasonable possibility of its successful reorganization within a reasonable time since the plan and the two amended plans were all unconfirmable as a matter of law. Accordingly, we AFFIRM.