NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

In re:                              )    BAP No.   AZ-11-1326-JuKiCl
                                    )
SUNNYSLOPE HOUSING LIMITED          )    Bk. No.   11-02441
PARTNERSHIP,                        )
                                    )
                Debtor.             )
_____     )
FIRST SOUTHERN NATIONAL BANK,       )
                                    )
                Appellant,          )
                                    )
v.                                  )    M E M O R A N D U M*
                                    )
SUNNYSLOPE HOUSING LIMITED          )
PARTNERSHIP,                        )
                                    )
                Appellee.           )
_____     )

Argued and Submitted on January 18, 2012
at Phoenix, Arizona

Filed - February 1, 2012

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Randolph J. Haines, Bankruptcy Judge, Presiding
_____

Appearances:    Dale C. Schian, Esq. of Schian Walker, P.L.C.
                argued for appellant First Southern National
                Bank; Bradley Pack, Esq. of Engleman Berger, P.C.
                argued for appellee Sunnyslope Housing Limited
                Partnership.
                _____

_____

     * This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

-1-

Before:  JURY, KIRSCHER, and CLARKSON,[**] Bankruptcy Judges.

Appellant, First Southern National Bank ("FSNB"), appeals the bankruptcy court's order denying its motion for relief from stay (the "MRS").[1]  We AFFIRM.

## I. FACTS

Chapter 11[2] debtor, Sunnyslope Housing Limited Partnership, is an Arizona limited partnership.  Sunnyslope Housing, LLC ("SH,LLC") is debtor's general partner and is owned by Reid Butler ("Butler").  RBC Tax Credit Equity, LLC and RBC tax Credit Manager II, Inc. (affiliates of the Royal Bank of Canada) are debtor's limited partner and special limited partner (collectively, the "Limited Partners").

Debtor's sole asset is an apartment project in Phoenix, Arizona, which it operated as an affordable housing community. The affordable housing restrictions recorded against the property gave debtor tax credits in the amount of $539,973 per year.

Butler owns Butler Housing Company, which acted as the

[**] Hon. Scott C. Clarkson, Bankruptcy Judge for the Central District of California, sitting by designation.

[1] FSNB also appealed the bankruptcy court's order denying its motion for summary judgment on dismissal of the bankruptcy case.  Appellee-debtor moved to dismiss this portion of the appeal as untimely.  The Panel granted debtor's motion on December 9, 2011.  Therefore, this appeal addresses only the MRS order.

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

developer of the apartment complex. Financing for the acquisition, construction and development of the project was provided by an $8.5 million loan funded from the sale of municipal bonds[3] (the "Capstone Loan"), secured by a first deed of trust; a $3 million loan from the City of Phoenix (the "City Loan"), secured by a second deed of trust; a $500,000 loan from the State of Arizona (the "Arizona Loan"), secured by a third deed of trust; and equity financing provided by an affiliate of the Royal Bank of Canada (the "RBC").

From the outset, debtor experienced a number of challenges, which included a significant increase in construction costs and the downturn of the real estate market. To add to its troubles, the RBC, which had injected millions of dollars into the project, ceased funding debtor's operations, which caused debtor to default under its loan agreements.

In September 2010, HUD sold all right, title and interest in the Capstone Loan and Capstone Deed of Trust to FSNB for just over $5 million. Thereafter, FSNB filed a complaint against debtor in the Arizona state court requesting the appointment of a receiver. On October 21, 2010, the state court appointed a receiver. The receiver entered into market-rate leases that moderately increased the cash flow of the property. Also, pursuant to his duties under the receiver order, the receiver commenced marketing efforts to sell the property. Because of those efforts, a buyer agreed to purchase the property for

---

[3] The Secretary of Housing and Urban Development ("HUD") insured the repayment of the Capstone Loan.

-3-

$7.65 million.

On November 1, 2010, FSNB noticed a trustee's sale of the property.

On January 31, 2011, SH,LLC filed an involuntary petition for relief against debtor under chapter 11 to prevent the trustee's sale.

On February 16, 2011, FSNB filed the MRS.[4] Debtor and the City of Phoenix (the "City") filed timely objections. The City expressed its concern that if FSNB foreclosed, the affordable housing restrictions on the apartment project would be extinguished to the detriment of the City's interest and the public's interest in maintaining the supply of affordable housing that was the purpose for which public funds were expended to construct the Property. The Limited Partners filed a position statement supporting the MRS.

On March 2, 2011, the court held the initial hearing on the motion. The Minute Entry reflects that the court authorized Butler to appear as debtor's counsel at that hearing,[5] scheduled a final evidentiary hearing on April 20, 2011, and ordered the parties to submit a joint pretrial statement by April 4, 2011 (which they did).

---

[4] The motion was actually titled as an "Emergency Motion For An Order Either: (1) Dismissing Bankruptcy Case; (2) Granting Relief From the Automatic Stay; or (3) Excusing Turnover."

[5] Butler was a licensed attorney in Arizona and admitted to practice before the bankruptcy court.

-4-

On March 14, 2011, FSNB filed an emergency motion[6] for summary judgment seeking the dismissal of the bankruptcy case.

On April 11, 2011, the bankruptcy court denied FSNB's motion for summary judgment and treated the petition as a voluntary filing by SH,LLC on behalf of debtor. The Minute Entry Order also reflects that the court informed Butler that debtor must be represented by counsel at the April 20, 2011 evidentiary hearing on the MRS or the case would be dismissed.

On April 18, 2011, debtor moved to continue the MRS evidentiary hearing because of its need for funds that were held by various entities. Debtor asserted that although it had its counsel in place, the funds were needed to pay administrative fees. At the April 20, 2011 evidentiary hearing on the MRS, the court heard debtor's motion for the continuance. From what we can tell, FSNB claimed an interest in a portion of the funds which debtor sought to have released. As a result, FSNB requested a continuance of the MRS evidentiary hearing to May 17, 2011, which the court granted. On its own, the court continued the hearing from May 17 to May 19, 2011.

At the May 19, 2011 evidentiary hearing,[7] FSNB provided no witnesses and relied on the statements set forth in the parties' joint pretrial statement and its loan documents, which were

---

[6] Despite the "emergency" title, the court did not schedule the hearing on an emergency basis.

[7] At the time of the final hearing, the bankruptcy court had not yet determined whether debtor was a single asset real estate debtor subject to the requirements under § 362(d)(3). The court made that determination by Minute Entry Order entered on June 27, 2011.

-5-

stipulated into evidence.  Because it was undisputed that debtor had no equity in the property under § 362(d)(2)(A), the focus of the hearing was on § 362(d)(2)(B) and whether the property was necessary to an effective reorganization.

Butler testified about debtor's prospects for an effective reorganization.  He testified that debtor would continue to operate the apartment project as an affordable housing community and opined that the project was worth approximately $3.5 million.  Butler further testified that FSNB would receive payments of interest on its secured claim and debtor would negotiate for the repayment of the City Loan and the State Loan over a period of forty years.  Butler explained that the funding of debtor's plan would occur through net operating income ("NOI") and a cash infusion from new investors interested in the benefits of the tax credits.  Finally, Butler testified that debtor already had a firm commitment from a qualified investor to purchase the equity interests of debtor and obtain the benefit of the tax credits for at least $1.2 million.

After hearing Butler's testimony, the bankruptcy court questioned Butler about certain aspects of the proposed plan: namely, how the property's NOI would improve over past performance, whether the City or the State of Arizona supported the project as an affordable housing for reasons other than the money they loaned to it, and what Butler or his companies would get out of the plan.  Butler explained that the property had occupancy problems, but with marketing and the assistance of a management company that had expertise in the affordable housing area, the property could generate the $200,000 per year to

-6-

provide payments to FSNB. Butler also explained that the City and State of Arizona had put $3.5 million of public funds in the project in order to maintain it as a long-term affordable housing project. Finally, Butler testified that he was not looking to be repaid the monies he had put into the project. Rather, at most, his companies would receive an asset management fee.

In the end, the bankruptcy court decided that debtor had met its burden of proof under § 362(d)(2)(B). The court acknowledged that the proposed plan had feasibility problems, but that the standard for proving feasibility was not that high for purposes of debtor's burden of proof under § 362(d)(2)(B). The court found that based on Butler's testimony, debtor's proposed plan could likely pass the feasibility standards under § 1129(a)(11). The bankruptcy court also found that it was possible debtor could meet the best interests test under § 1129(a)(7) if it paid FSNB the value of the property as it existed at that point in time; i.e., as an affordable housing property. Next, the court discussed whether debtor could get an accepting impaired class if FSNB's lien was stripped down and its deficiency claim classified with all the other debt. Relying on Heartland Fed. Savings & Loan Assoc. v. Briscoe Enters., Ltd. (Matter of Briscoe Enters., Ltd., II), 994 F.2d 1160 (5th Cir. 1993), the court found support for the separate classification of FSNB's unsecured deficiency claim. Last, the court found there was no evidence that the value of the property was declining and thus FSNB would not be harmed by the continued existence of the stay. The court denied FSNB's motion by Minute

-7-

Entry Order entered on May 24, 2011. FSNB timely appealed the order.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err by denying FSNB's MRS?

## IV. STANDARDS OF REVIEW

We review for abuse of discretion orders denying relief from an automatic stay. Moldo v. Matsco, Inc. (In re Cybernetic Servs.), 252 F.3d 1039, 1045 (9th Cir. 2001); Sun Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc.), 171 B.R. 71, 74 (9th Cir. BAP 1994).

> In applying our abuse of discretion test, we first 'determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested.' If the bankruptcy court identified the correct legal rule, we then determine whether its 'application of the correct legal standard [to the facts] was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.' If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion.

USAA Fed. Sav. Bank. v. Thacker (In re Taylor), 599 F.3d 880, 887-88 (9th Cir. 2010)(citing United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)).

## V. DISCUSSION

Section 362(d)(2) requires the bankruptcy court, on request of a party in interest, to grant relief from the automatic stay

-8-

when there is no equity in a property and the property is not necessary for an effective reorganization. According to the record, it was undisputed that debtor did not have equity in the property. Therefore, the burden of proof shifted to debtor to show that the property was necessary for an effective reorganization. § 362(g).

Property is necessary for an effective reorganization for purposes of § 362(d)(2)(B) if "the property is essential for an effective reorganization *that is in prospect*. This means . . . that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" United Sav. Ass'n Tex. v. Timbers of Inwood Forest Assoc., Ltd., 484 U.S. 365, 375-76 (1988) (emphasis in original) (quoting In re Timbers of Inwood Forest Assoc., Ltd., 808 F.2d 363, 370-71 & nn. 12-13 (5th Cir. 1987) (en banc)). In light of the standard espoused in Timbers, we have interpreted the "effective reorganization" requirement under § 362(d)(2)(B) as requiring the debtor to prove that a proposed plan "is not patently unconfirmable and has a realistic chance of being confirmed.'" Sun Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc.), 171 B.R. 71, 75 (9th Cir. BAP 1994) (internal citations omitted). We have further acknowledged that the debtor's burden of proof under § 362(d)(2)(B) may be viewed as a "moving target" — less stringent in the early stages of the case and more difficult as time progresses. Id.

By its citation to Timbers, it is clear that the bankruptcy court identified the correct legal rule to apply in evaluating debtor's burden under § 362(d)(2)(B). Hr'g Tr. May 19, 2011 at

-9-

27:10-15. It is the court's application of this rule that FSNB disputes in this appeal. FSNB argues that the bankruptcy court clearly erred in reaching its decision because (1) the stay relief trial was not held until four months after the petition was filed and (2) debtor presented no evidence that a confirmable plan, i.e., one that satisfies all sections of the Code, including § 1129, was in prospect. In effect, FSNB advocates that debtor's burden of proof at the MRS evidentiary hearing was essentially the same as its burden would have been at confirmation due to the length of time that had passed.

This position, however, is contrary to the rules in Timbers and In re Sun Valley Newspapers. Neither case holds that debtor's burden of proof under § 362(d)(2)(B) requires debtor to show that its reorganization plan is confirmable under § 1129, even in later stages of the case. Otherwise, the relief from stay hearing would be converted into a confirmation hearing, which is something we warned against in In re Sun Valley Newspapers, 171 B.R. at 75 (noting that a relief from stay hearing should not be converted into a confirmation hearing).[8]

Focusing on the "moving target" analysis in In re Sun Valley Newspapers, debtor contends that because its case was in the early stages, its burden of proof under § 362(d)(2)(B) was especially light. "In the early stage of the case, 'the burden of proof . . . is satisfied if the debtor can offer sufficient evidence to indicate that a successful reorganization is

---

[8] Indeed, the statutory requirement under § 362(d)(2)(B) that debtor prove the property is necessary for an effective reorganization is not contained in § 1129.

-10-

"plausible".'" In re Sun Valley Newspapers, 171 B.R. at 75. Plausible means "superficially reasonable, appearing worthy of belief." Merriam-Webster's Dictionary, http://merriam-webster.com.

In its reply brief, FSNB contends that debtor's burden should be greater because the MRS was not resolved until 108 days into the case, which was near the end of the exclusivity period. "Near the end of exclusivity period, 'the debtor must demonstrate that a successful reorganization within a reasonable time is "probable".'" In re Sun Valley Newspapers, 171 B.R. at 75. "Probable" means more likely than not. Merriam-Webster's Dictionary, http://merriam-webster.com.

Although FSNB argues for a more stringent standard of proof, other facts, besides the length of time necessary to complete the MRS hearing, suggest that debtor's case was still in the early stages at the time the court made its decision to deny FSNB's motion. After all, the bankruptcy court did not enter the order for relief until April 12, 2011, and just over a month later, the MRS was resolved. The 120-day exclusivity period under § 1121(c)(2) was not set to expire for another three months. Further, the facts demonstrate that during the first four months of debtor's bankruptcy, debtor was utilizing the time to (1) defend the MRS which FSNB filed just two weeks after the filing, (2) defend FSNB's summary judgment motion to dismiss its case, and (3) obtain counsel and the release of funds. Thus, one could conclude that even at 108 days into the case, debtor's reorganization was still in the "early stages."

In any event, pinpointing the exact stage of a bankruptcy

proceeding is a fact intensive endeavor.  <u>In re Ashgrove</u> <u>Apartments of DeKalb Cnty., Ltd.</u>, 121 B.R. 752, 756 (Bankr. S.D. Ohio 1990) (noting that each case is different and must be viewed on its own with the facts of each case being fully considered).  However, we are not fact finders and it is not crystal clear from the record as to exactly which "moving target" burden of proof the bankruptcy court applied. Nonetheless, the key point for purposes of this appeal is that the bankruptcy court explicitly recognized that debtor's burden of proof under § 362(d)(2)(B) was not as high as that for confirmation at that particular stage of the case.[9]

Therefore, rather than resolving the "moving target" dispute raised by the parties, we take our guidance from the more general principles set forth in <u>In re Sun Valley Newspapers</u> regarding debtor's burden of proof.  Namely, that the debtor must show that its proposed plan (1) was not patently unconfirmable and (2) had a realistic chance of being confirmed. 171 B.R. at 75.  We next consider whether there was sufficient evidence to support the bankruptcy court's factual findings on these issues.

"A finding is clearly erroneous when there is no evidence in the record supportive of it and also, when, even though there is some evidence to support the finding, the reviewing court, on

---

[9] At the evidentiary hearing, the court stated:  "I don't think the evidence today would satisfy the feasibility test if we were at a confirmation hearing, but I don't think the standard . . . at a stay relief stage of the case is quite that high." Hr'g Tr. May 19, 2011, at 72:6-7.  "And as I suggested, the testimony at the confirmation hearing is going to have to be a lot better than it was today."  <u>Id.</u>, at 74:9-11.

-12-

review of the record, is left with a definite and firm conviction that a mistake has been made in the finding." United States v. Gypsum Co., 333 U.S. 364, 395 (1948). We may have a definite and firm conviction that a mistake has been made if the bankruptcy court's interpretation of the facts was illogical, implausible, or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1261-62 & n. 21 (9th Cir. 2009) (en banc) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 577 (1985)) (explaining that the clearly erroneous standard of review is an element of the clarified abuse of discretion standard). The clearly erroneous standard does not permit us to conduct a de novo review of the evidence, but it does allow this Panel to consider whether there was enough evidence in the record to support the factual findings of the bankruptcy court. See Civil Rule 52(a), incorporated by, Rule 7052(a). Further, our review under the clearly erroneous standard is more deferential with respect to determinations about the credibility of witnesses. Anderson, 470 U.S. at 575.

At the outset, we disagree with FSNB's sweeping statement in its opening brief that debtor provided no evidence to meet its burden of proof under § 362(d)(2)(B). Butler's live testimony was evidence. FSNB complains that Butler's testimony consisted of unsubstantiated hopes and speculations, but this assertion is based on the lack of corroborating evidence and Butler's lack of personal knowledge.[10] Thus, FSNB's claim of

---

[10] FSNB also complains that much of Butler's testimony included hearsay or lacked foundation, but FSNB failed to

(continued...)

-13-

error in this appeal actually touches on issues concerning the weight of the evidence and credibility.

Although debtor presented no evidence corroborating Butler's testimony at the hearing, FSNB fails to point to any countervailing evidence in the record that conclusively contradicted Butler's testimony. Rather, in its appellate brief, FSNB points only to facts in the record that may suggest another outcome; i.e., that debtor had no chance of having its proposed plan confirmed since the project was "doomed from the start". However, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson, 470 U.S. at 574. Our role in this appeal is not to reweigh the evidence presented to the bankruptcy court. Id. at 575.

In addition, FSNB had the opportunity to challenge Butler's credibility through cross-examination. We must assume that its efforts did not convince the bankruptcy court because, in the end, the court's decision apparently rested entirely on Butler's credibility. The bankruptcy court accepted, as true, Butler's proffer that the NOI from the property would rise once the property was properly marketed and managed. The court also accepted, as true, Butler's proffers that the value of the property was $3.5 million and that a capital contribution to

---

[10](...continued) identify any specific testimony that it considered inadmissible. Moreover, FSNB did not object to any of the testimony at the hearing. We do not consider this argument raised for the first time on appeal. Cold Mountain v. Garber, 375 F.3d 884, 891 (9th Cir. 2004).

debtor would be made. "[W]hen the [bankruptcy] court's decision is based on testimony that is coherent and plausible, not internally inconsistent and not contradicted by external evidence, there can almost never be a finding of clear error." Anderson, 470 U.S. at 575.

FNSB attempts to point out inconsistencies by comparing Butler's testimony to the disclosure statement and plan that debtor eventually filed. However, as noted by FSNB, those documents were filed after the MRS was resolved and therefore could not have been relevant to the bankruptcy court's determination on May 19th. Consequently, we cannot consider the argument about the alleged inconsistencies in the evidence at all. We thus conclude that there was an evidentiary basis for the bankruptcy court to reach the conclusions that it did regarding Butler's testimony.

Having accepted Butler's testimony as true, the bankruptcy court then simply used § 1129 as a guidepost to determine whether debtor's proposed plan had a realistic chance of being confirmed. Hence, the court identified the issues of feasibility (§ 1129(a)(11)), the best interests test (§ 1129(a)(7)(A)(ii)), whether an impaired class would accept debtor's plan (§ 1129(a)(10)), and the absolute priority rule and the new value corollary (§ 1129(b)(2)(B)(ii)), as trouble spots for its consideration. However, to that end, the court did not rule, as a matter of law, that debtor's plan was confirmable, as FSNB appears to suggest and argue in its brief.

Based on the evidence in the record, it was well within the bankruptcy court's discretion to find that debtor's plan was

-15-

probably feasible, especially when the feasibility hurdle is not that high at the relief from stay stage of the proceedings. It was also within the court's discretion to find that debtor could likely meet the best interests test by paying FSNB the value of the property, as an affordable housing project.[11] Moreover, the bankruptcy court's conclusion that debtor may be able to get an impaired class to accept the plan by separately classifying FSNB's deficiency claim was supported by the Fifth Circuit's decision in Matter of Briscoe, 994 F.2d 1160. Finally, because there was some evidence of a new value contribution through Butler's testimony, which the bankruptcy court must have found credible, it was within the bankruptcy court's discretion to conclude, as it did, that the absolute priority rule could be

---

[11] The best interests test requires that a reorganization plan either garner acceptance from each holder of an impaired claim or interest or provide such holder with "property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 . . . on such date." §1129(a)(7)(A)(ii). Butler testified the value was $3.5 million and courts generally allow an owner of property to give his opinion on value. See Barry Russell, Bankruptcy Evidence Manual § 701:2 (2011 ed.). Butler also owned the company which developed the property. Moreover, the "value" referred to under the best interests test is "as of the effective date of the plan." The extent of FSNB's allowed claim had not yet been determined at the MRS evidentiary hearing, nor was such a valuation required at that time.

In December 2011, in connection with debtor's proposed plan, the bankruptcy court entered a Minute Entry Order finding that the value of FSNB's secured claim was $2.6 million. FSNB has appealed that order to the district court. [Bankr. Ct. Dkt. No. 281.] See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003) (authorizing reviewing court to take judicial notice of pleadings docketed in the bankruptcy court).

-16-

satisfied. In sum, we conclude that the bankruptcy court's factual findings on the § 1129 issues were supported by the evidence in the record. Therefore, those findings are not clearly erroneous. Having applied the correct legal standard to its factual findings, the court did not abuse its discretion in denying FSNB's MRS.

Finally, FSNB argues that the bankruptcy court erred by not granting its MRS under § 362(d)(1). That section states that the court shall grant relief from stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." FSNB argues that cause exists because debtor filed its petition in bad faith and there is a lack of adequate protection. The record shows that FSNB did not argue the issue of debtor's bad faith at the evidentiary hearing. If an issue is not raised in the bankruptcy court, we will not usually consider it for the first time on appeal. Beck v. Pace Int'l Union, 427 F.3d 668, 674 (9th Cir. 2005), rev'd on other grounds, 127 S.Ct. 2310 (2007). Moreover, the record shows that the bankruptcy court found no evidence that the value of the property was declining. FSNB does not direct us to a part of the record where evidence of deterioration in value was presented. Without evidence on the adequate protection issue, we cannot possibly conclude that the court erred.[12]

### VI. CONCLUSION

For the reasons stated, we AFFIRM.

---

[12] As noted above, FSNB chose to present limited evidence at the final evidentiary MRS hearing.